MARTHA J. VLIET and her husband

*v.*

ADAM YOUNG.

A deed of lands, accompanied by a lease thereof to the grantor, containing a clause for redeeming the lands, by paying a certain amount within a specified time, is a mortgage, and not defeated by the grantor's failure to make a tender within the time limited, although the grantee took possession of the premises at the expiration of the lease. The time for making such tender may be extended by parol.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. R. V. Lindabury,* for complainants.

*Mr. W. W. Anderson,* for defendant.

THE CHANCELLOR.

The complainants, on the 5th of July, 1869, executed a deed conveying to the defendant in fee a lot of land of about ten acres, in Somerset county, belonging to Mrs. Vliet. The consideration expressed is $400. It is stated in the deed that the conveyance is made subject to a mortgage of $400, held by Rachel C. Amerman. It was in fact held by the administrator of her estate. Contemporaneously with the giving of the deed, a lease of the premises was given by Young to Mrs. Vliet and her husband, for a term extending from that time to the 1st of April then next (1880), at a rent of $24 a year, payable quarterly, with provision that in case of default for five days in the payment of the rent, the Vliets would give up possession to Young. The lease contained, also, an agreement that the Vliets should have the opportunity and privilege of redeeming the property by paying, or causing to be paid, to Young, his heirs or assigns, the sum of $400, on or before the 1st of April, 1880 ; and they,

on their part, agreed that in default of paying that money on or before that day they would give up possession to him, his heirs or assigns. The complainants did not pay the money, or any part of it, within the time fixed by the agreement. Mrs. Vliet, however, on the 22d of May, 1880, tendered to Young the $400, and $18 as the rent due up to the 1st of April, 1880. Young took possession of the property April 2d, 1880, by pasturing his sheep thereon. Therefore, no rent had accrued from the first of that month. When Mrs. Vliet tendered him the money, he took the $18 for the rent, but refused the $400. The bill was filed on the 25th of June. It prays that the deed, which the complainants say they did not, when they signed, understand to be what it purports to be, may be annulled, or that it may be decreed to be a mortgage, and that they may be permitted to redeem by paying the $400, and interest thereon from the 1st of April, 1880, provided Young shall pay off the Amerman mortgage, he to come to an account with them for the use of the property since he has been in possession ; or if the deed and lease together shall be construed to be a conveyance, with agreement for reconveyance, that Young may be decreed to specifically perform his agreement to reconvey on payment of the $400. Young, by his answer, alleges that the deed was understood by the complainants when they executed it ; that when the tender was made the time for redemption had passed, and had not been extended ; that the tender was not absolute, and that if it was he was not and is not bound to convey. He admits that the Amerman mortgage is held by one William Hillard, by assignment from Amerman's administrator.

The history of the transaction preceding the execution of the deed and lease appears to be as follows : Young (who was then the owner of the property), in 1869, conveyed it to Mrs. Vliet. It was subject to the $400 mortgage, which was given by him to secure his bond. In 1879, the holder of that mortgage, Rachel Amerman's administrator, pressed the Vliets for payment of the money due upon it. They were unable to respond, and he threatened foreclosure. Young heard of it, and being, as he says, anxious, in view of his liability on the bond, to

Vliet v. Young.

avoid the expense of foreclosure proceedings, offered to help them in the matter, proposing to pay off the mortgage, or to get Hillard to take an assignment of it, and so give them time to raise the money. They accepted his offer, and left it to him to make the necessary arrangements for his security and their protection. He asked for the deed which he had given Mrs. Vliet for the property, and it was delivered to him. He gave instructions to the scrivener whom he employed as to the instruments of writing to be drawn, and on the 5th of July, 1879, he and they met at the scrivener's office to execute the papers, and the deed and lease were then produced and signed. Young paid no consideration for the deed, and did not agree to pay any. He did not pay off the mortgage, but got Hillard to pay it and take an assignment from the holder. He has never expended anything upon the property. He did not get the deed recorded until after the tender. The property is not improved with any buildings. By the deed to him, the conveyance is declared to be for the consideration of $400, and also to be subject to the mortgage. By the lease, the privilege of redemption by paying the mortgage is given to the Vliets.

Young evidently contemplated raising the money for the mortgage, and wanted the property for security, and he was willing, if the Vliets would convey the property to him, to raise the money and give them time to obtain it, as, it proved in the sequel, they were able to do. Hence he adopted the plan of a deed to him, and a lease, to secure the interest of the $400, by way of rent, with an agreement of defeasance. The Vliets insist that they did not understand that they were to convey the property to Young. But whether they did so or not is quite immaterial, for if the transaction was such as I have stated, the deed must be held, in equity, to be a mere mortgage. And whenever it can be clearly shown to be the intention of the parties that real estate, when conveyed, shall be subject to redemption, it is considered as a mere security, and the right of redemption cannot be confined to a limited time. *Youle* v. *Richards, Saxt. 534; Crane* v. *Bonnell, 1 Gr. Ch. 264.* But, further, according to the clear weight of the evidence, Young expressly

agreed to extend the time for redemption to the 1st of July, and the tender was made in May. Vliet testifies that on the 1st of April he went to see Young, and told him that he and his wife had the promise of the money (as indeed they had), and requested him to give them three or four weeks further time, and he says that Young, in reply, said that at any time between that day and the 1st of July " that Vliet got the money he would give up the property." Mrs. Vliet swears that at the time of the tender, on Young's refusal to take the money, she asked him whether he did not make that promise to her husband, and he replied that he did, but added that he was not going to do so until he got his sheep off the land and the crops gathered. Mr. Hoffman, who was present, corroborates her statement. William P. Sutphen, who was also there, says that Young told him, in that interview, that there was an agreement, and it had been extended to the 1st of July. He says he thinks it was on some conditions, and that Young said that now he could not take the money or give up the property, and that the money was not coming to him anyway, but would have to go to Mr. Hillard; and he further says that the reason Young gave why he did not give up the property was that he had purchased some sheep and was pasturing them there.

To the testimony of Mrs. Vliet, and Hoffman and Sutphen, on the subject of his admission that he had extended the time, there is opposed only Young's denial. The tender appears to have been wholly unconditional, and it is clear that Young refused it solely on the ground that Mrs. Vliet had lost her right to redeem. The complainants, in their bill, tender themselves ready to pay off the mortgage on receiving a reconveyance of the property, and that is in accordance with their understanding of the agreement, for Mrs. Vliet, in her testimony, says that she understood that after the making of the lease she and her husband were to have the property as they had had it before, and were to pay the interest on the $400 which Young had borrowed for them, and she adds that Young told her that he had borrowed $400 of Mr. Hillard, which he, Young, was to let her have. They are entitled to redeem on paying the amount due

on the mortgage, and Young will be required to reconvey ac-cordingly to Mrs. Vliet on those terms, and to come to an ac-count with her for the rents, issues and profits. In the accounts he will be allowed for interest and taxes, if any paid. He will be required to pay costs.